IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

TIMOTHY R.B.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 4:20-cv-04082-SLD-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 12) and the Commissioner's Motion for Summary Affirmance (Doc. 14). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Timothy R.B. filed an application for supplemental security income (SSI) on September 12, 2016, alleging disability beginning on October 24, 2013. He later amended his alleged onset date to September 12, 2016. His claim was denied on February 3, 2017 and upon reconsideration on June 15, 2017. Timothy filed a request for hearing concerning his SSI application, and a hearing was held on November 5, 2018. At the hearing, Timothy was represented by an attorney, and Timothy and a vocational expert (VE) testified. Following the hearing, Timothy's SSI claim was denied on January 29, 2019. His request for review by the Appeals Council was denied on February 7, 2020, making

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 9) on the docket.

1

the ALJ's Decision the final decision of the Commissioner. Timothy timely filed the instant civil action seeking review of the ALJ's Decision on April 2, 2020.

## II

At the November 2018 hearing, Timothy was 52 years old, was a high school graduate, and lived by himself in a home his brother bought for him. He was 5'10" and 233 pounds. In response to the ALJ's question regarding Timothy's past work, Timothy explained that he stopped working in 2008 because he "didn't think [he] could deal with anybody for – as far as foremans [phonetic] or supervisors, whichever." AR 98. He also testified that in terms of his physical health, his legs bothered him the most as they bothered him "constantly." AR 99.

The ALJ pointed out during the hearing that Timothy had severe obstructive sleep apnea and used both an inhaler and nebulizer. Timothy added that he was also on a steroid inhaler and was given a CPAP machine which he did not have anymore because he was "too claustrophobic for it to be on [his] face." AR 100. He explained that a nose application would not take care of his issues. Later, the ALJ noted Timothy's obstructive sleep apnea was a "complicating factor" insofar as his sleep issues were concerned. Timothy responded that his sleep was "[p]robably not the best. Last night wasn't very good whatsoever." AR 103. Timothy agreed he was nervous about the hearing and stated his anxiety was "through the roof." *Id*. When asked if he thought his sleep apnea played into his daytime drowsiness, Timothy answered that he had no idea and had not asked if that might be the problem.

Upon questioning by his attorney, Timothy answered that he slept "[q]uite a few days" during the daytime, "probably four of out of the seven days[.]" AR 109. He said his daytime sleep "just happens." AR 110. His spent his days watching "some" TV and he also did "some" napping. AR 111. He said he wasted money on expensive food when he placed it in the oven and then fell asleep.

The ALJ proceeded to ask the VE a series of questions about a hypothetical individual. The ALJ first included that the hypothetical individual was limited to, among other things, work that involved no more than ordinary or routine changes in work

setting or duties. The VE identified the unskilled, medium strength jobs of linen room attendant and housecleaner. In the second hypothetical, the ALJ limited the individual to the performance of simple and routine tasks on a sustained basis with only routine breaks "[d]ue to a combination of factors that affect concentration, persistence, and pace." AR 115. The VE identified the jobs of cafeteria attendant and "housekeeping, cleaner." *Id*. Timothy's attorney asked the VE about someone who could otherwise work in a light work capacity but who would be working at a slower pace occasionally such that the individual was off task or less productive than other employees part of the day. The VE answered that the threshold for getting less done or working a little slower compared to other individuals was 90%.

### III

At Step Two of the disability analysis, the ALJ determined that Timothy had the following severe impairments: history of arrhythmias; obstructive sleep apnea; chronic obstructive pulmonary disorder; obesity; and affective disorder. AR 70. At Step Three, the ALJ detailed why Timothy's impairments, neither individually nor in combination, met or medically equaled the severity of the listed impairments. Specifically with regard to obstructive sleep apnea, the ALJ explained that it was considered, "but there is no evidence of any disorder, such as pulmonary hypertension, chronic heart failure or disturbances in mood, cognition or behavior, which results from the claimant's obstructive sleep apnea that would mee any listed impairment." AR 72. As for the severity of Timothy's mental impairment, the ALJ determined Timothy had no more than moderate limitations in three of the four broad areas of functioning and no more than mild limitation in one. As for the area of concentration, persistence, or pace, the ALJ noted Timothy's statements that he was limited in concentration generally, focus generally, following instructions, and completing tasks. The ALJ contrasted those statements with Timothy's additional statements that he was able to drive, prepare simple meals, watch television, use the internet, and manage funds to find Timothy was no more than moderately limited in this area.

At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) with the following non-exertional limitations. He can never climb ladders, ropes, or scaffolds. He can climb ramps and/or stairs, balance, stoop, kneel, crouch, and/or crawl no more than occasionally. He must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and hazards, like unprotected heights or dangerous machinery. Due to deficits in concentration, persistence and pace from his physical and mental impairments, he is reasonably limited to performing simple and routine tasks on a sustained basis with only routine breaks. He will do best in a setting with reduced social demands; considering this, any work should not require more than occasional contact or interaction with the general public and any work should not require more than occasional interaction with supervisors or coworkers. Any work must not involve more than ordinary or routine change in work setting or duties.

AR 74. In support of his RFC finding, the ALJ considered the medical records pertaining to Timothy's physical and mental health dated between June 2016 and September 2018, Timothy's reports and testimony as to his impairments, a December 2016 psychological consultative evaluation, a May 2017 internal medicine consultative evaluation, the reviewing State Agency doctors' evaluations of the record and their opinions, a mental health practitioner's September 2016 letter, an advanced registered nurse practitioner's October 2018 mental impairment questionnaire, Timothy's GAF scores, and a May 2017 Third Party Function Report by Timothy's son. In summarizing the medical tests performed during the relevant period, the ALJ included that a sleep study conducted in January 2018 indicated severe obstructive sleep apnea with 86.5 events per hour. That polysomnography (sleep study) report detailed background information that Timothy "presented with complaints of excessive daytime sleepiness and snoring" and that he had a "prior diagnosis of sleep apnea in 2013." AR 564. The report's laboratory findings included that the "baseline demonstrated an apnea-hypopnea index of 86.5 events per hour." AR 565. With a CPAP setting of 14 cm of water tested during 115.5 minutes of sleep, the "apnea-hypopnea index was 15 events per hour and sleep efficiency was 95%."

*Id*. The report recited Timothy's report that he slept "better" with the mask and that he felt "the same" in the morning after the study night. *Id*.

The ALJ considered Timothy's complaints of sleep difficulty, increased irritability, and continued sleep issues documented in his medical records. The ALJ also considered Timothy's complaints to the psychological consultative examiner that he had energy fluctuations and occasional insomnia. Timothy's son noted in his Third Party Function Report that he observed his father's conditions to affect Timothy's sleep as he slept less often and his father's conditions affected Timothy's concentration and completion of tasks, among other things. The ALJ concluded that Timothy had not shown disabling limitations from obstructive sleep apnea though it was found to be "severe." AR 77. The ALJ relied upon treatment notes which provided Timothy was unable to tolerate a CPAP machine due to feelings of claustrophobia, and was unsuccessful in maintaining a different form of therapy for longer than a week such that "[t]his evidence of non-compliance suggests the claimant's symptoms may not be as limiting as alleged in connection with this application." *Id*.

As for Timothy's mental limitations, the ALJ included that the psychological consultant found Timothy's concentration adequate, and the consultative internal medicine examiner found Timothy to be oriented with appropriate appearance and behavior and to be polite, pleasant, and cooperative and with normal affect. The ALJ noted that when Timothy complained of sleep difficulty and increased irritability in January 2017, his mental status examination was unremarkable. As for Timothy's continued complaints of sleep issues in June 2017 at which time his attention and concentration were noted to be somewhat decreased, the ALJ considered that Timothy admitted to not taking his Trazodone as prescribed and reported his daughter was recently in a serious car accident and his sister-in-law received a cancer diagnosis. The ALJ again noted Timothy's unremarkable/normal mental status examinations in 2018.

The ALJ concluded that the medical and other evidence of record did not support greater mental limitations than those included in the RFC finding. The ALJ cited the following in support of that conclusion: Timothy had not sought emergency treatment or

5

crisis center intervention and had not been hospitalized for any mental health reason; his "largely" unremarkable mental status examinations; periods of treatment noncompliance; symptom improvement with treatment compliance; and his activities including going to bars to sing karaoke, helping a friend move, preparing simple meals, driving, shopping, visiting with family, engaging in social media, watching television, and caring for personal care and hygiene without difficulty, and caring for his dog. AR 79.

## IV

Timothy argues: 1) the ALJ erred in failing to submit to medical scrutiny objective evidence of a previously undiagnosed sleep disorder; and 2) the ALJ failed to give to the VE a true picture of the extent of Timothy's mental limitations.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 416.966. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. See 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Timothy claims error on the ALJ's part at Steps Four and Five.

A

Timothy first argues that the ALJ erred in interpreting a January 2018 sleep study himself absent any medical opinion evidence about its meaning. The sleep study was

7

conducted after the State Agency doctors reviewed the record and after Timothy's consultative examinations were performed. Timothy points to records which documented his reports that he could not focus, lost patience, and had problems with concentration and completing things and which documented his complaints of disturbed sleep which led to increased irritability and daytime tiredness. He says those symptoms were precisely the ones attributed to obstructive sleep apnea, that the sleep study therefore indicated a heretofore undiagnosed impairment that commanded proper evaluation, and the ALJ ultimately decided limits in concentration, persistence, and pace without any medical support whatsoever. The Commissioner counters that substantial evidence supports the ALJ's RFC determination. As for the ALJ's alleged error in not submitting the January 2018 sleep study for expert review, the Commissioner argues there was no such error where the ALJ clearly considered the sleep study, where diagnosis alone does not provide for the extent of restriction necessary to accommodate the condition, and where the regulations provide that ALJs, not doctors, assess a claimant's RFC.

The Seventh Circuit has made clear that "an ALJ may not 'play[ ] doctor' and interpret 'new and potentially decisive medical evidence' without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (quoting *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014)). Notably, the record the ALJ reviewed contained no shortage of medical professionals who either rendered opinions after reviewing Timothy's records or who conducted examinations of his physical and mental impairments. In December 2016, Timothy underwent a psychological consultative examination at which time he indicated that his sleep was marred on occasion by initial insomnia but was generally adequate. In May 2017, Timothy underwent an internal medicine consultative examination at which time the examining doctor noted that Timothy alleged disability due to emphysema, dizziness, and blood issues. The State Agency reviewing doctors rendered their opinions in January, February, and June 2017. However, it was not until January 15, 2018 that Timothy underwent the polysomnogram (sleep study) which revealed that he had "very severe obstructive sleep apnea," as later medical records

would describe the results of that sleep study. *See, e.g.,* AR 540, 543, 547. As for those later medical records, the sleep study was not scrutinized; rather, the study's results were merely summarized in subsequent medical records in 2018, and the February 2018 record provided that Timothy "verbalize[d] understanding regarding how severe his sleep apnea is." AR 547. Rather than submit the January 2018 sleep study report to medical scrutiny, the ALJ alone scrutinized the report.

The Commissioner is correct that it was for the ALJ and not doctors to assess Timothy's RFC. *See* 20 C.F.R. § 416.927(d)(2) (providing that the final responsibility for deciding a claimant's RFC is reserved to the Commissioner). But it is one thing for an ALJ to look at all the evidence of record and decide "the maximum a claimant can still do *despite* his mental and physical limitations" and quite another to decide a diagnosed physical impairment presents only a particular level of mental limitation as set forth in the RFC finding without medical input on the matter. *See* 20 C.F.R. § 416.945(a)(1) (defining RFC) (emphasis added); *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) ("The RFC is the maximum that a claimant can still do despite his mental and physical limitations"); *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves") (quoting *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014)). The ALJ did the latter[2] when he stated that "considering [Timothy's] combination of mental and physical impairments, *including severe obstructive sleep apnea*, I asked the [VE] to consider deficits in concentration, persistence and pace that limit him to performing simple and routine tasks on a sustained basis." AR 79 (emphasis added). Earlier in the Decision, the ALJ stated:

> Due to deficits in concentration, persistence and pace from a combination of his physical and mental impairments that result from poor sleep and fatigue and symptoms of depression, the claimant is reasonably limited to performing simple and routine tasks on a sustained basis with only routine breaks.

---

[2] Timothy puts it this way: "[The ALJ] interpreted the study on his own to determine that it could lead to no more than moderate limitations in concentration, persistence and pace." Plf's MSJ (Doc. 13 at pg. 14).

9

AR 78. Taken all together, the foregoing statements make clear that the ALJ found the sleep study report to be decisive medical evidence and then improperly proceeded to determine the significance of that report himself.

While the Commissioner is also correct that diagnosis alone does not provide for the extent of restriction necessary to accommodate the condition, the point Timothy makes is that the ALJ did not have the expertise to assess the severity of his symptoms as a result of the diagnosis of obstructive sleep apnea. Timothy's point is well taken. The January 2018 sleep study report provided "laboratory findings" and the "impression" of "severe sleep-disordered breathing" with a reduction in "events" with the use of a CPAP. AR 564-65. The sleep study report did not provide information about the effect of Timothy's obstructive sleep apnea, whether treated with a CPAP or not, on his mental faculties. The later treatment notes that mentioned the sleep study also did not indicate whether Timothy's obstructive sleep apnea could or was affecting his mental faculties; the records recited the study's results, indicated the assessment of severe obstructive sleep apnea, and noted Timothy's use of a CPAP was short-lived and that he was willing to utilize a nasal pillow mask and was agreeable to investigating oral appliance options. As Timothy points out, the State Agency PhDs answered in January and June 2017 "No" to the question of whether Timothy had sustained concentration and persistence limitations. AR 126, AR 142. The ALJ necessarily conducted his own assessment of the sleep study where he highlighted Timothy's severe obstructive sleep apnea in explaining his departure from the State Agency psychological consultants' summary ratings.

The Commissioner argues that substantial evidence, including evidence of Timothy's daily activities, treatment notes, and failure to use a CPAP or other device to treat his sleep apnea supports the ALJ's RFC determination. But that evidence was considered alongside the sleep study report which was distilled only through the ALJ's eyes into a particular level of limitation in the area of concentration, persistence, or pace. The Court is therefore left to wonder whether the evidence of Timothy's daily activities, treatment notes, and failure to use a device during sleep was found by the ALJ to be inconsistent with Timothy's allegations of limitation in mental functioning, or whether

the ALJ found that evidence was merely consistent with *his own interpretation* of the sleep study results. As Timothy argues, medical opinion evidence about critical medical findings is necessary to determine the consistency of a claimant's alleged symptoms with those findings as part of the RFC determination *See, e.g., McHenry*, 911 F.3d at 871 ("An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments"). In many cases, an ALJ's mental RFC finding is above reproach if the subjective symptom evaluation is supported by a proper consideration of the claimant's daily activities, treatment records, and compliance with prescribed treatment, among other factors. The problem here is that the ALJ first essentially played doctor in deciding what level of mental limitation the physical impairment of severe obstructive sleep apnea presented. Only then did he proceed to determine whether Timothy's daily activities, treatment records, etcetera were consistent with his understanding of the sleep study. *See Moreno v. Berryhill*, 882 F.3d 722, 729 (7th Cir. 2018) (rejecting the agency's argument that newer mental health records would not have made a difference because they showed improvement where the argument was based upon the ALJ's own assessment of more recent records that was not justified under the circumstances of the case).

B

In the event this case is remanded for the foregoing reasons, the ALJ may ultimately craft a different RFC. Thus, the Court will not proceed to consider Timothy's second argument that the ALJ failed to give the VE a true picture of the extent of Timothy's mental limitations.

V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 12) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 14) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. §405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on May 25, 2021.

<u>s/Jonathan E. Hawley</u>
U.S. MAGISTRATE JUDGE